## In re CONEY ISLAND HOTEL CORPORATION.

## CONEY ISLAND HOTEL CORPORATION v. VAN SCHAICK, Superintendent of Insurance.

### No. 339.

Circuit Court of Appeals, Second Circuit.
March 11, 1935.

Hughes, Schurman & Dwight, of New York City (John Fletcher Caskey and John R. McCullough, both of New York City, of counsel), for Superintendent of Insurance.

Herrick & Feinstein, of Brooklyn, N. Y. (Samuel Silbiger, of Brooklyn, N. Y., of counsel), for certain creditors.

Harry L. Thompson, of Brooklyn, N. Y. (E. Robert Willcox, of New York City, of counsel), for Title Guarantee & Trust Co.

Henry Rosenblum, of New York City (Abraham L. Levenson, of New York City, of counsel), for debtor.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order issued under subdivision (c) (10) of section 77B of the Bankruptcy Act (11 USCA § 207 (c) (10) staying the foreclosure of a mortgage already pending in the state court when the petition was filed. In substance it is the same situation as In re Murel Corporation, 75 F.(2d) 941, decided at the same time, and it requires no added discussion except in so far as the facts differ. The debtor, as its name shows, owns a hotel at Coney Island, on which on September 15th, 1926, it executed a mortgage to the Title Guarantee & Trust Co. in the face amount of $1,000,-000. The mortgagee lent $750,000 and some of the debtor's directors $100,000 more, which although secured by the same mortgage, was in fact junior in lien. When the mortgage expired the senior lien was $690,-000 and the junior $160,000; it was then renewed so as to expire on October 1, 1934. After the first mortgage there comes a second of $310,000, and a third of $514,000; ahead of all come over $100,000 of taxes and water charges on which interest and penalties have accrued. Upon the first lien of $690,000 there are arrears of interest of more than $110,000. The amount of the assessment is not stated, nor do we know more

about the value of the real property than that it is carried upon the debtor's books at about $2,000,000, and that the earnings have never been more than enough to cover expenses. The interest and taxes being in default, a foreclosure suit was commenced in June, 1933, through the agency of a guarantor of certain "participation certificates," which the mortgagee had issued; and a receiver for the rents and profits was appointed. Section 77B of the Bankruptcy Act (11 USCA § 207) was passed in June, 1934, and the debtor did nothing until November 16, 1934, when it filed the petition at bar. At no time has it submitted any "plan of reorganization" nor do we know what kind of plan it contemplates. After the bill was filed the guarantor went into "rehabilitation" under the Insurance Law of New York and the superintendent took over its assets. A plan of reorganization of the guarantor is pending in the Supreme Court of New York, but it protects only those having an interest in the mortgage. The holders of the "participation certificates" oppose any reorganization under section 77B.

It is conceivable that when the plan of reorganization under section 77B is submitted it may offer a sufficient substitute for the lien of the mortgage. We leave that question open to the consideration of the District Court when the question arises. But as it now stands, the case is like In re Murel Holding Corporation, except that there is even less reason to grant a stay. The foreclosure had been going on for nearly eighteen months before the petition was filed, and it had been possible to file it for nearly six months. No plan had been prepared; the debtor apparently supposed that the mere filing of the petition was enough to stop the foreclosure. That is not so, as we have said in the companion case. We do not forget In re Prudence Bonds Corporation, 75 F.(2d) 262, where we affirmed a stay of a state suit in a proceeding under section 77B before any plan of reorganization had been filed. The situation was quite different from that now at bar. A single one of many certificate holders of a trust of pledged securities sued the pledgee for an accounting, seeking to impound and distribute the property which it held as a trustee for all. It did not indeed appear that two-thirds of the certificate holders had consented to the bankruptcy proceeding, and of course they had not done so to any plan of reorganization; but it was the pledgee itself which sought the stay and undertook to speak for

the class as a whole, until a plan could be presented. That situation justified the court in holding off a single holder who sought to forestall the power of the entire class to pass upon any future plan. Here the class has declared itself and resists; it will have to be coerced as a unit.

This order will be reversed without passing upon the questions mooted; we may never have to decide them, for it is at least possible that when the plan is suggested, the District Court will not think it justifies a stay.

Order reversed.