### In re ISLAND PARK ASSOCIATES, Inc.
### No. 412.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

Milbank, Tweed, Hope & Webb, of New York City (William Dean Embree and George W. Jaques, both of New York City, of counsel), for Title Guarantee & Trust Co.

Hughes, Schurman & Dwight, of New York City (John Fletcher Caskey and John R. McCullough, both of New York City, of counsel), for George S. Van Schaick, Supt. of Insurance of State of New York, as Rehabilitator of Bond & Mortgage Guarantee Co.

John Holley Clark, Jr., of New York City, for Committee of Certificate Holders.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle and Lloyd V. Almirall, both of New York City, of counsel), for J. Russell Sprague and Theodore N. Ripsom, trustees for the debtor.

George J. Mintzer, of New York City, for debtor-appellee.

Clark, Sickels & Barton, of New York City, and Morgan, Lewis & Bockius, of Philadelphia, Pa. (John S. Sickels, of New York City, and W. James MacIntosh, of Philadelphia, Pa., of counsel), for Mary Austin and Rebecca J. Austin, etc.

Herrick & Feinstein, of Brooklyn, N. Y., for Committee of Certificate Holders.

Medina & Sherpick, of New York City (Eugene A. Sherpick, of New York City, of counsel), for amici curiæ Hackett and Taub.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The Island Park Associates, Inc., a debtor, filed a petition in bankruptcy for reorganization under section 77B of the Bankruptcy Act (11 USCA § 207). The petition was approved and permanent trustees were appointed. The corporation owned or controlled five properties, one of which is involved in this appeal. That property consists of 1,751 lots, 245 of which are under contracts of sale for $301,783.66; the remainder are unsold. There was a blanket mortgage, on which the sum of $1,225,013 is due and unpaid. Originally it was for $1,975,000. There are arrears of taxes and interest, making a total sum now due of

$1,767,200.88. Certificates of participation have been issued against this mortgage and are in the hands of approximately 570 persons. There have been various appraisals as to the value of this property, the debtor appraising the unsold lots at $3,600,000, and the lots under contract at $301,783.66. The Title Guarantee & Trust Company procured an appraisal of the 1,506 unsold lots at the sum of $2,599,100. The property is carried on the books of the debtor at $1,500,000; it is assessed at approximately that figure.

The debtor has the following interests in addition to the above properties:

(1) Atlantic Beach Club, located on the boardwalk at Atlantic Beach; it consists of 60 lots leased to the Atlantic Beach Management Corporation which operates the club. There is a first mortgage on the property of $425,000, which has been certificated and which certificates are now in the hands of holders thereof. The mortgage is in arrears of interest and taxes, and the lowest of three appraisals made in January 1935, fixed its value of $1,200,000.

(2) The Nautilus Beach Club, an eight-story semi-fireproof hotel, owned by the Casa Del Mar Club Holding Company, Inc. This is subject to a mortgage of $425,000, and all the stock is held by the debtor. The mortgage has also been certificated. The lowest of three appraisals on this property, made in January 1935, is $700,000.

(3) The Silver Point property, consisting of 60 acres of land partially improved with cabanas and bath houses, owned by the Atlantic Beach Development Corporation, 75 per cent. to 90 per cent. of the stock of which is owned by the debtor. There is a mortgage of $397,000. The lowest of three appraisals on this property made in January, 1935, is $1,500,000.

(4) The debtor also owns the capital stock of the Atlantic Beach Bridge Corporation, which owns and operates a toll bridge subject to a mortgage bond issue of $300,000 and a second mortgage of $200,000. The debtor claims an equity of $737,000 in this property.

The Title Guarantee & Trust Company is the trustee of the mortgage on the vacant lots. The mortgage was certificated and guaranteed by the Bond & Mortgage Guarantee Company, which is in the hands of liquidators for rehabilitation. The certificate holders, Gage et al., the Title Guarantee & Trust Company, and the State Superintendent of Insurance, are appealing from five orders made in these proceedings. They are:

(a) February 11, 1935, an order was entered which denied a motion of the certificate holders to vacate an order of December 18, 1934, which order approved the debtor's petition, appointed temporary trustees, and enjoined the commencement or continuation of suits against the debtor and the enforcement of any liens against the debtor's property, the denial being upon condition that the debtor or any other party propose and file a plan of reorganization within 30 days; and it also gave authority, after the expiration of 30 days, for any party to move for further time to propose and file such plan.

(b) March 14, 1935, an order was entered which denied motions of the Title Guarantee & Trust Company and the committee of certificate holders, to vacate the order of December 18, 1934, as amended by an order of January 16, 1935. The latter order amended the order of December 18, 1934, to the extent that it should not be deemed to restrain proceedings under the Schackno Act to the point of but not including the making of final judgment or decree.

(c) March 14, 1935, an order was entered appointing a special master for the purpose of hearing and reporting on a plan of reorganization proposed by the debtor and its subsidiaries, together with all changes therein, and on all plans of reorganization which might properly be proposed by parties in interest.

(d) March 14, 1935, an order was entered which denied the motion of the Title Guarantee & Trust Company to vacate the stay granted in the order of December 18, 1934, and to dismiss the petition of the debtor.

(e) March 14, 1935, an order was entered appointing permanent trustees for the debtor and four of its subsidiaries.

The first order is the subject of the first appeal and the last four orders are the subject of the second appeal. Both appeals have been consolidated.

The foreclosure of this mortgage was commenced August 4, 1932. No receiver was appointed.

In January, 1934, the debtor, in co-operation with the Insurance Department of the State of New York and the Title Guarantee & Trust Company, formulated a plan for the rehabilitation of the mortgage on the

vacant lots, in the state court under the Schackno Act. Laws N. Y. 1933, c. 745. This plan provided that the certificate holders, over a period of five years, would receive their principal in full together with accrued interest up to the date of the promulgation of the plan, plus a graduated rate of interest during the five years. But before authoritative approval, Gage and other certificate holders, began a suit in the state court based upon malfeasance and neglect on the part of the Title Guarantee & Trust Company. November, 1934, after this trial had progressed for three weeks, a tentative settlement was formulated and a plan of rehabilitation of this mortgage proposed. It provided that the Title Guarantee & Trust Company pay the certificate holders 75 cents on the dollar for their certificates, 25 per cent. down, and the balance to be paid with 2 per cent. interest in yearly installments by January 1, 1939. The deferred payments were to be secured by the certificates themselves until the mortgage was foreclosed, and by one-half of the Title Company's interest in the stock of the Atlantic Beach Bridge Corporation. An additional 25 per cent. was to be paid to the extent that the property yielded by sale more than $918,000, plus taxes and interest, by January 1, 1940. The Title Guarantee & Trust Company agreed to pay the expenses and counsel fees of the certificate holders and the cost of the foreclosure. These details were about consummated, when the present proceedings under section 77B (11 USCA § 207) were instituted.

The plan submitted by the debtor, which has been referred to a special master to report upon, provides for the organization of a new corporation under the laws of the state of New York. The property owned by the debtor and its subsidiaries will be conveyed to this corporation. In consideration of the payment to the Title Guarantee & Trust Company of $463,000, the title company is to sell to the corporation its right, title, and interest in and to 100 per cent. of the stock of the Atlantic Beach Bridge Corporation and its interest in the first mortgage on Silver Point, and in addition thereto cancel the indebtedness due to the banking department of the Title Guarantee & Trust Company from the debtor. A new mortgage will be placed on the Silver Point property of approximately $1,058,500. In consideration of the payment to the Marine Midland Trust Company, as trustee for the benefit of bondholders, the sum of $300,000, and to the estate of William L. Austin, Sr.,

the sum of approximately $263,000, the mortgage on the Atlantic Beach Bridge will be discharged. The mortgagees, including the certificate holders of the respective mortgages, will assign to a mortgage company to be approved by the court, the mortgage on the 1,751 lots held by the Title Guarantee & Trust Company as trustee, the mortgage made by the Casa Del Mar Club Holding Company, and the mortgage on the Atlantic Beach Club, amounting to $2,075,000. It is planned that in addition to these mortgages so assigned, the new corporation will mortgage, with the mortgage company to be approved by the court, additional properties and securities consisting of the Silver Point property of $1,058,500; all the stock of the Atlantic Beach Bridge Corporation valued at $866,500; a total of $4,000,000. The new corporation will obtain a loan secured by a prior participating interest in all the mortgages and securities aforementioned, in the sum of $2,500,000, to bear interest at the rate of 4 per cent. per annum, to mature in ten years and to be amortized at the rate of at least $50,000 a year, the moneys secured thereby to be used to pay the certificate holders of the mortgage here in question 40 per cent. in cash; the certificate holders of the Atlantic Beach Club, 40 per cent. in cash; of the Nautilus Beach Club, 40 per cent. in cash; the banking department obligation of $463,000; first mortgage bondholders of the Atlantic Beach Bridge Corporation, $300,000; and a second mortgage on the Atlantic Beach Bridge Corporation, past-due taxes and penalties, and other obligations together; afford a working capital of $164,000; making a total of $2,500,000. In addition to making the 40 per cent. cash payments, the new corporation agrees to retire at least 5 per cent. of the total original outstanding bonds per year. The unsecured creditors are provided for, and 90 per cent. of the common stock of the new corporation will be divided among the present stockholders of the debtor and its subsidiary corporations.

It is argued that under this plan 40 per cent. of the face amount of the certificates are paid in cash, whereas under the Title Company's plan only 25 per cent. is in cash. Under the debtor's plan, the certificates will be amortized at the rate of 5 per cent. per year so that at the end of five years, 65 per cent. of the face amount of these certificates will have been paid in cash. Under the Title Company's plan, it is provided that within five years the certificate holders are to receive 75 per cent.; the balance of 25

per cent. is conditional and may not be received by the certificate holders, whereas under the debtor's plan the promise is an unconditional obligation to pay the entire amount. Under the Title Company's plan, the result of the tentative settlement of the law suit brought by the certificate holders against the Title Guarantee & Trust Company, there is no provision for junior lienors or general creditors, whereas the debtor's plan promises to so provide.

This plan has been submitted to the special master to hear and report with his opinion thereon for the court's advisement. There is a provision that there may be changes or modifications recommended or approved by him.

■ The petition for reorganization under the provisions of section 77B was approved, and the court below has exclusive jurisdiction of the debtor and its property wherever located, and it has [subdivision (c) (10), section 77B, 11 USCA § 207 (c) (10)] the power to enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree. The plan of settlement or proceedings under the Schackno Law (Laws N. Y. 1933, c. 745), suggested as a settlement between the certificate holders and the Title Guarantee & Trust Company, cannot become effective, under its terms, until the mortgage is foreclosed. The certificate holders have not as yet voted their approval or disapproval of the proposed plan of the debtor. It may be that two-thirds of this class of creditors may approve the plan—they may also disapprove it—but they should, at least, have an opportunity of having it presented to them, and of voting upon it.

In the debtor's plan, it proposed to pledge all its property, and has tried to reorganize all as one enterprise. The court below has approved the petition as filed in good faith. Before the master has reported or the plan been voted upon, we are asked to hold that the plan should not be approved. As said in the Chicago, Rock Island & Pacific R. Co. Case, 55 S. Ct. 595, 606, 79 L. Ed. ——, April 1, 1935: "It may be, as suggested, that during the period of restraint the collateral will decline in value; but the same may be said in respect of an injunction against the sale of real estate upon foreclosure of a mortgage; and such an injunction may issue in an ordinary proceeding in bankruptcy. * * * A claim that injurious consequences will result to the pledgee or mortgagee may not, of course, be disregarded by the district court; but it presents a question addressed not to the power of the court but to its discretion —a matter not subject to the interference of an appellate court unless such discretion be improvidently exercised."

■ As we pointed out in Re Greyling Realty Corp., 74 F.(2d) 734, the purpose of the act is to avoid immediate liquidation of the properties involved in the reorganization of a corporation and its subsidiaries with a view to rehabilitate rather than to liquidate.

The provisions of the order permitting the filing of the plan, and its consideration, in the instant case were fair and equitable. The plan was filed within the 30 days fixed and referred to a master, and it should there be dealt with as expeditiously as possible.

We have heretofore disapproved unwarranted stays which caused delay in the proper and expedient enforcement of liens of mortgages. In re 235 West 46th St. Co., Inc. (C. C. A.) 74 F.(2d) 700; In re Murel Holding Corp. (C. C. A.) 75 F.(2d) 941, 943; In re Coney Island Hotel Corp. (C. C. A.) 76 F.(2d) 126. Construing clause 10, subd. (c), we said in Re Murel Holding Co., supra: "It does not seem to us that this setting authorized any stay; it should appear that the plan proposed has better hope of success; full details may not be necessary, but there must be some reasonable assurance that a suitable substitute will be offered. No doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare; much depends upon how long he has had already, and upon how much more he demands. But a stay should never be the automatic result of the petition itself, and we cannot see that there was here anything else of substance."

■ A plan of reorganization, within the meaning of section 77B, subd. (b) (5), 11 USCA § 207 (b) (5), must, by the terms of the act, provide in respect of each class of creditors of which less than two-thirds in amount shall accept the plan (unless the claims of such class of creditors will not be affected by the plan, or the plan makes provision for the payment of their claims in cash in full) adequate protection for the realization by them of the value of their

interests, claims, or liens, if the property affected by such interests, claims, or liens is dealt with by the plan, as is set forth in this subdivision.

The court below had the power, and could, in its discretion, consider this, the first plan proposed by the debtor, and provide for its consideration by a master to report. In this way the court can be fully advised as to its terms, practicability, and the ability of the debtor to carry it out. The class of creditors represented by the appellants can, if they wish, accept or reject it, but until they have had opportunity to vote and express their decision, we should not reject the plan in advance of their consideration.

Order affirmed.