In re PRUDENCE COMPANY, Inc.
In re AMALGAMATED PROPERTIES, Inc.
RECONSTRUCTION FINANCE CORPORATION v. PRUDENCE CO., Inc., et al.
No. 409.

Circuit Court of Appeals, Second Circuit.
June 14, 1937.

588

James B. Alley, Gen. Counsel, of Washington, D. C., Root, Clark, Buckner & Ballantine, of New York City, Charlton Ogburn, Sp. Counsel, of New York City (William P. Palmer, Charlton Ogburn, and Frank L. Dewey, all of New York City, of counsel), for Reconstruction Finance Corporation.

Miller, Owen, Otis & Bailly, of New York City (Edward J. Bennett and Mark F. Hughes, both of New York City, of counsel), for debtor The Prudence Co., Inc.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Irving L. Schanzer, Irving Rozen, and Hubert Margolies, all of New York City, of counsel), for trustees of Prudence Co., Inc., debtor.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Prudence Company, Inc., and Amalgamated Properties, Inc., are both in bankruptcy, being administered by trustees as authorized by section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The order appealed from, entered in the consolidated reorganization proceedings, denied a petition of the appellant asking a vacation of injunctions in so far as they restrained it from exercising its rights over collateral pledged by Prudence Company, Inc., as security for a $20,000,000 loan.

In March, 1933, the Prudence Company, Inc., was engaged in the business of guaranteed mortgages. Amalgamated Properties, Inc., a wholly owned subsidiary of the Prudence Company, Inc., held, directly and indirectly, real estate which had been taken in foreclosure of the Prudence mortgage liens.

In June, 1932, appellant loaned the Prudence Company, Inc., on its note, guaranteed by the New York Investors Inc., its parent corporation, $20,000,000. This note matured June 8, 1934. A loan agreement defined its terms. The collateral originally given by the Prudence Company, Inc., was appraised at $15,500,000. The guaranty of the New York Investors,

Inc., was required and a further guaranty of $1,000,000 by other corporations and individuals who were associated with the Prudence Company, Inc. The appellant reserved the right to require additional security at any time 'and to accelerate the maturity of the note if such further demanded collateral was not forthcoming.

On August 15, 1933, the note became due and unpaid upon acceleration of its maturity by the appellant. Only $7,000 of principal had been paid when, on February 1, 1935, the court below took jurisdiction of the Prudence Company, Inc., in the section 77B proceedings and issued the injunctions here sought to be modified. Later, on March 17, 1936, the Amalgamated injunction was issued in a section 77B proceeding. On January 1, 1937, the principal and interest unpaid amounted to $22,643,288.31. The validity of the Prudence Company's pledge to the appellant was challenged but upheld by this court in Re Prudence Company, Inc., 88 F.(2d) 420. On December 11, 1936, the appellant petitioned for relief from these injunctions.

The collateral pledged consisted of nine bonds and mortgages with an aggregate unpaid principal of $12,067,123.22; a note of the Allied Owners Corporation of $1,000,000; the stock of the Amalgamated Properties, Inc.; a note of Amalgamated to Prudence of the face amount of $7,803,355.28 secured by the following subcollateral: (1) The stock of 58–59 Realty Corporation, a wholly owned subsidiary of Amalgamated Properties, Inc.; (2) a note of the 58–59 Realty Corporation to Amalgamated in the sum of $2,000,000; (3) 97 out of 100 shares of stock of the Warren Corner Holding Corporation, a subsidiary of Amalgamated Properties, Inc.; (4) 97 out of 100 shares of stock of the Washington-Jersey Holding Corporation, a subsidiary of the Amalgamated Properties, Inc.

The mortgages, except one for $14,000, are in default as to principal, interest, and taxes. The properties are not earning enough to pay current interest and taxes and two (mortgages amounting to $1,753,000) are not earning operating expenses. The notes of Amalgamated Properties, Inc., and Allied Owners are due and unpaid. Each company whose stock is included in the collateral has liabilities exceeding its assets. Income from the collateral does not carry current interest on the Prudence note. Interest on the

note from February 1, 1935, to December 1, 1936, amounted to $2,015,458.70, and collections from the collateral amounted to but $874,196.83, 2.39 per cent. of the unpaid principal which draws interest at 5½ per cent.

The Amalgamated collateral is subject to a loan agreement which was executed by Amalgamated Properties, Inc., with the Prudence Company, Inc., upon the express understanding that the agreement, together with the Amalgamated note and collateral, were to be assigned and repledged by the Prudence Company, Inc., to the appellant and such assignment and repledge were duly made. The Prudence Company, Inc., loan agreement and note, the Amalgamated Properties, Inc., note and loan agreement, granted powers and privileges to appellant to sell any or all the items comprising the collateral, to collect and enforce payment, when due, of the mortgages and notes comprised in the collateral by foreclosure or otherwise; to designate directors, officers, and employees of the Prudence Company, Inc., or its subsidiary and all companies whose stocks were pledged as collateral. The $1,000,000 guaranty of corporations and individuals is a liability expressly conditioned upon the existence of a deficiency after realization by appellant upon Prudence collateral.

The injunctions sought to be vacated enjoined all persons from interfering with the debtors' property or the administration of their affairs. They affirmatively prejudice the appellant. The amount of the total indebtedness continues to multiply. The appellant is deprived in great part of its right to supervise and control the collateral property. It has already been restrained for two years, receiving 2.39 per cent. instead of the 5½ per cent. interest called for by the note. Failure to realize on the collateral prevents appellant from recovering on the $1,000,000 guaranty.

The answering affidavit and papers fail to support the injunctions issued as against the appellant. They do not disclose any equity in the Prudence Company. Prudence Company's own valuation shows the note to be under-collateralized. Eight of the nine bonds and mortgages are in default. The Amalgamated Properties note in the face amount of $7,803,355.28 has a book value of only $2,600,000. The balance sheet of Amalgamated shows liabilities of approximately $6,400,000 in excess of its assets. The aggregate face amount of all mortgages and notes is $20,870,478.50 as compared with $22,642,288.31 due January 1, 1937. It is justly claimed that the conditions here described show a deficit in collateral.

Assuming that the value of the Amalgamated Properties is not truly reflected, as argued, because of alleged upward trends in real estate, it is equally clear that only a fantastic revaluation could render the collateral adequate. It is unimportant to the rights of the appellant now that it saw fit in 1932 to make this loan on insufficient collateral. No claim is advanced that there will ever be any equity for Amalgamated Properties in the subcollateral securing its note. Its note face value is $7,803,355.28 and the book value of the security does not exceed $540,000.

But it is argued that a plan of reorganization has been filed and that foreclosure of the collateral would interfere with the consummation of that plan. Even if that were so, the enforcement of a secured creditor's rights may not be unreasonably and indefinitely postponed. Guaranty Trust Co. of New York v. Henwood, 86 F.(2d) 347 (C.C.A.8). Moreover, it is not adequately shown that the withdrawal of the collateral will materially affect the prospects, if any, of a successful plan. In granting the appellant the relief sought, nothing is taken out of the estate in which other creditors have an interest and their attitude toward the plan would be unaffected thereby.

It is unnecessary to examine the proposed plan of reorganization for the Prudence Company further than to say that it provides for a moratorium of the debt, the substitution of a note of twenty-year maturity, the waiver of all unpaid interest, and a reduction of interest from 5½ per cent. to 3 per cent. It has been disapproved by a resolution of January 22, 1937, adopted by the appellant. It would be impossible to impose a plan on the appellant over its objection, and hence the prospect of reorganization offers no reason for continuing the injunctions. As stated, the orders of restraint were issued at the commencement of the section 77B proceedings. There has never been any showing that reorganization was or is feasible or that appellant would obtain in any reorganization an acceptable substitute for its security, In re Murel Holding Corp., 75 F.(2d) 941 (C.C.A.2), or that there is

590

any equity in the collateral for the Prudence Company or Amalgamated Properties, or that the exercise of appellant's rights would obstruct or hinder reorganization. Such facts are prerequisite to a continuance of the injunctions.

 The burden rested on the debtors to show cause why injunctions should be enforced in the section 77B proceedings. Foust v. Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. ——; In re Coney Island Hotel Corp., ·76 F.(2d) 126 (C.C.A. 2); In re Murel Holding Corp., supra. It was an abuse of discretion to continue the injunctions when appellant asked for their vacation. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595; 79 L.Ed. 1110, a proceeding under section 77 (11 U.S.C.A. § 205), is to be distinguished, for there the value of the collateral was shown to exceed the amount of the indebtedness.

Section 77B authorizes a flexible procedure for the rehabilitation or the liquidation of a debtor's property, but should permit no interference with the rights of secured creditors under facts as are disclosed by this record.

The order is reversed, with directions to grant the relief prayed for.