**Matter of GENERAL STORES CORPORATION, Debtor.**

United States District Court
S. D. New York.
Jan. 2, 1957.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Ruskin & Rosenbaum, Chicago, Ill., by Simon H. Rifkind, New York City, Harry H. Ruskin, Chicago, Ill., John E. Massengale, Stephen Wise Tulin, New York City, of counsel, for petitioner, Lewis J. Ruskin.

Frederick P. Close, White Plains, N. Y., by Martin Drazen, White Plains, N. Y., of counsel, for trustee, Charles H. Griffiths.

Otterbourg, Steindler, Houston & Rosen, New York City, by Frederic P. Houston, New York City, of counsel, for General Stores Corp., debtor.

Louis J. Weinshenker, New York City, Edward A. Gorenstein and Walter Goodman, Chicago, Ill., Associate Counsel, for creditor, Richard Goodman.

Netter & Netter, New York City, by Edward Rothenberg, New York City, of counsel, for Florence Brill, stockholder.

Townsend & Lewis, New York City, by John F. Davidson, New York City, of counsel, for Stockholders' Protective Committee.

Richard V. Bandler, New York City, by Kiva Berke, New York City, of counsel, for Securities and Exchange Commission.

LEVET, District Judge.

Petitioner, as trustee under a Collateral Trust Agreement, dated May 19, 1954, seeks to vacate a stay ordered by this Court on May 1, 1956. Pursuant to said stay, Rexall Drug Company and petitioner, individually and as trustee, are restrained from foreclosing or selling the shares of stock of Stineway Drug Company and Ford Hopkins Company, pledged by the debtor as security for the payment of two purchase notes totaling $2,065,000, which were issued by the debtor in connection with its acquisition of all of the outstanding stock of the Ford Hopkins Company. The debtor, formerly known as D. A. Schulte Inc., is no longer directly engaged in a retail business, having liquidated its assets by disposing of the chain of tobacco stores which it once operated. Thus, the Stineway and Ford Hopkins securities are the debtor's sole income-producing assets.

On October 18, 1954, five months after the execution of the Collateral Trust Agreement, the debtor instituted proceedings for an arrangement under Chapter XI of the Bankruptcy Act. 11 U.S.C.A. § 701 et seq. On motion by a stockholder and the Securities and Ex-

change Commission, the District Court ordered that the proceedings be dismissed unless, within a time fixed by the Court, the petition be amended to comply with the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., D.C., 129 F.Supp. 801. This decision was affirmed by the Court of Appeals, 2 Cir., 222 F.2d 234 and by the Supreme Court, 350 U.S. 462, 76 S.Ct. 516. Accordingly, an amended petition for reorganization under Chapter X was filed by the debtor on April 30, 1956, and was approved by an order of this Court dated May 1, 1956, wherein it was provided that the petitioner herein was restrained from foreclosing on the collateral in question.

The petitioner, as trustee under the Collateral Trust Agreement, represents the entire class of the debtor's secured creditors. Consequently, he states that he will refuse to accept any proposed plan of reorganization unless his claim is paid in full and that since he represents more than two-thirds of the class of secured creditors, no plan of reorganization can be approved without his consent unless he is afforded "adequate protection" within the meaning of Section 216(7) of the Bankruptcy Act, 11 U.S.C.A. § 616 (7), which provides:

> "Sec. 216. A Plan of reorganization under this chapter—
>
> \* \* \* \* \* \*
>
> "(7) shall provide for any class of creditors which is affected by and does not accept the plan by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their claims against the property dealt with by the plan and affected by such claims, either as provided in the plan or in the order confirming the plan, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such claims; or (b) by a sale of such property free of such claims, at not less than a fair upset price, and the transfer of such claims to the proceeds of such sale;

or (c) by appraisal and payment in cash of the value of such claims; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection; \* \* \* "

Petitioner further contends as follows:

(a) The debtor and junior creditors have no equity in the collateral because its value is less than the amount of the claims secured and, therefore, immediate foreclosure should be permitted.

(b) No fair, equitable and feasible plan of reorganization can be effected;

(c) There has been a long delay in these proceedings and that such delay requires a vacation of the stay.

(d) Continuation of the stay is not sought in good faith.

(e) The stay may not be continued for the purpose of effecting liquidation under the aegis of Chapter X.

(f) The burden of justifying the continuation of the stay is upon those supporting its continuance.

Under the Collateral Trust Agreement, petitioner was entitled to nominate a majority of the Board of Directors of the Stineway and Ford Hopkins drug companies. Since petitioner controls the operation of these two subsidiaries, he does not, and cannot, claim that they are improperly managed by the debtor. However, petitioner does claim that there has been a transformation in the drug business and that large self-service drug stores and the sale of certain items in grocery chain stores are causing the disappearance of the conventional corner drug store. In order to meet this new form of competition, petitioner states that the Stineway and Ford Hopkins drug stores must be modernized and that this is not possible while said subsidiaries are affected by these proceedings.

Petitioner also alleges that Mr. Richard Goodman has become the chief general creditor of the debtor by his purchase of over 80% of the unsecured claims at 40¢ on the dollar and that he has thereby effectuated his own informal

"reorganization" of the debtor. Petitioner claims that Goodman has used his position to prevent petitioner from enforcing his rights against the collateral.

As representative of the entire class of the secured creditors, petitioner is correct in his contention that no plan of reorganization may be confirmed over his dissent in the absence of any provision whereby he is given "adequate protection" for the realization of the value of his claim. The term "adequate protection" has been interpreted to mean that the substitute offered "must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most *indubitable equivalence.*" [Emphasis added.] In re Murel Holding Corporation, 2 Cir., 1935, 75 F.2d 941, at page 942. See also Kyser v. MacAdam, 2 Cir., 1941, 117 F.2d 232; In re Radio-Keith-Orpheum Corporation, 2 Cir., 1939, 106 F.2d 22, certiorari denied Cassel v. Radio-Keith-Orpheum Corporation, 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519; Texas Hotel Securities Corporation v. Waco Development Co., 5 Cir., 1936, 87 F.2d 395, certiorari denied Waco Development Co. v. Rupe, 300 U.S. 679, 57 S.Ct. 671, 81 L.Ed. 883; Security-First Nat. Bank of Los Angeles v. Rindge Land & Navigation Co., 9 Cir., 1936, 85 F.2d 557, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452. A secured creditor may not be deprived of his security unless he receives payment in full. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 at page 580, 55 S.Ct. 854, 79 L.Ed. 1593. Since the absolute priority rule applies in reorganization proceedings, any plan which deprives a senior creditor of his rights for the benefit of junior classes would not be "fair and equitable, and feasible" within the

meaning of Section 174 of the Bankruptcy Act, 11 U.S.C.A. § 574. Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959; Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Northern Pacific Railway Company v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; Preble Corporation v. Wentworth, 1 Cir., 1936, 84 F.2d 73, certiorari denied 299 U.S. 575, 57 S.Ct. 39, 81 L.Ed. 424.

Notwithstanding the soundness of petioner's contention that as the representative of the entire secured class of creditors he is entitled to receive complete compensation or the "indubitable equivalence" of the rights he surrenders under any plan of reorganization, it cannot be concluded at this stage of the proceedings that a fair and equitable plan of reorganization is not feasible. The trustee and his accountants are in the process of completing their investigation of the debtor's financial condition and other matters relevant to this proceeding and to the formulation of a plan of reorganization. It does not appear, nor is it claimed, that the trustee has failed to act expeditiously. Upon completion of this investigation the trustee will file his report in accordance with the procedure set forth in Section 167 of the Bankruptcy Act, 11 U.S.C.A. § 567. Until the Court and interested parties are apprised of the impartially assembled facts relevant to the formulation of a plan of reorganization, the Court is in no position to reach an informed decision as to whether the debtor can be reorganized and the interested parties have no basis upon which they can prepare concrete suggestions and proposals for submission to the trustee as prescribed by Section 167(6) of the Act.

■■ The debtor's equity, if any, in the securities of its subsidiaries which were pledged under the Collateral Trust Agreement is a factor to be considered in determining whether to vacate the stay.

When it appears that "the debtor has no equity whatever in the collateral whose sale is enjoined and no fair prospect of ever having any, it cannot be said that the sale of the collateral will prevent the preparation and adoption of an otherwise possible plan of reorganization." In re New York, N. H. & H. R. Co., 2 Cir., 1939, 102 F.2d 923, 925. See also In re Prudence Company, Inc., 2 Cir., 1937, 90 F.2d 587. The debtor acquired all the outstanding shares of Stineway and Ford Hopkins stock at a total purchase price of approximately $4,400,000. The purchase price for the Ford Hopkins stock was $2,800,000, for which the debtor paid $735,000 in cash and gave its notes totaling $2,065,000 for the balance. According to petitioner's figures, the unpaid principal and interest is now approximately $2,260,000. Thus, petitioner holds as collateral for a $2,260,000 claim securities which were purchased by the debtor for $4,400,000. It should be noted, however, that the capital of the Stineway Drug Company has been reduced by reason of a cash loan which it made to the debtor in the sum of $1,310,000. Although the securities presently may not be worth the original purchase price, it cannot now be ascertained on the basis of the papers submitted on this motion that the value of the collateral is less than the debt. If subsequently it should appear, however, on the basis of credible evidence, that the debtor has no equity in the pledged collateral, the petitioner will be entitled to an order vacating the stay. In such case the fact that the pledged securities are the debtor's only income-producing asset will not justify a continuance of the injunction since "Chapter X, 11 U.S.C.A. § 501 et seq., was not intended merely to give mortgagors [or pledgors] a moratorium upon foreclosure." Lincoln-Alliance Bank & Trust Co. v. Dye, 2 Cir., 1940, 115 F.2d 234, at page 235. See also In re Coney Island Hotel Corporation, 2 Cir., 1935, 76 F.2d 126. If liquidation is all that can be expected, Chapter X may not be resorted to in order to delay petitioner from foreclosing on the collateral. See Fidelity Assurance Association v. Sims,

318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032. However, I do not believe that a continuance of the injunction until the trustee files his report will unduly delay petitioner from his realization of the value of his security.

It is claimed that continuation of the stay is not sought in good faith because there is no showing that there exists a reasonable expectation that a plan of reorganization can be effected, as required by Section 146(3), 11 U.S.C.A. § 546(3). However, before a judge can enter an order approving a petition for reorganization, he must first be satisfied that the petition was filed in good faith. Bankruptcy Act, § 141, 11 U.S.C.A. § 541. A creditor, indenture trustee, or stockholder may raise the issue of good faith by filing an answer to the petition, in which case the issue will be determined by the judge upon the proofs. Bankruptcy Act, § 144, 11 U.S.C.A. § 544. In the present case the secured creditor did not file any answer to the petition and the order approving the petition was entered upon a finding of good faith. Accordingly, said order is a conclusive determination of the jurisdiction of the Court to entertain this proceeding and to follow the mechanics of Chapter X, including a continuation of the stay pending the filing of the trustee's report. Bankruptcy Act, § 149, 11 U.S.C.A. § 549. The secured creditor is not now in a position to raise successfully the issue of good faith. See In re Technical Marine Maintenance Co., Inc., 3 Cir., 1948, 169 F.2d 548; Country Life Apartments, Inc. v. Buckley, 2 Cir., 1944, 145 F.2d 935. Although petitioner questions the propriety of Mr. Goodman's activities, this proceeding is not merely an economic struggle between petitioner and Goodman. It appears from the trustee's reply affidavit that there are over 6,000 holders of more than 1,750,000 shares of the debtor's stock, as well as hundreds of unsecured creditors with claims of more than $550,000. These creditors and stockholders have an interest in this proceeding which must be recognized independently of any conduct on the part

of Goodman, although nothing here stated is intended as any reflection upon such conduct. No issue as to Goodman's purchases is directly before this Court now.

The trustee and parties in opposition to this motion dispute petitioner's argument that the burden of proof is upon the debtor, or those supporting the injunction, to show that its continuance is necessary. It is beyond cavil that such was the case prior to the adoption of Chapter X. Foust v. Munson S. S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; In re Prudence Company, Inc., 2 Cir., 1937, 90 F.2d 587; In re Central of Georgia Ry. Co., D.C.S.D.Ga., 1942, 48 F.Supp. 445. It is claimed, however, that under Section 148, 11 U.S.C.A. § 548, the burden to justify a continuation of a stay is upon the person asking for that relief. This section provides that "Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act or other proceeding to enforce a lien against the debtor's property."

Manifestly, Section 148 is silent on the subject of burden of proof and from such silence it cannot be inferred that Congress intended to overrule existing case law in this matter. The trustee and other parties predicate their contention on a statement made by a witness before the House Judiciary Committee, who, in answer to a question with respect to the discretion of a court to vacate an automatic stay, said:

"We believe that, if a stay, which is self-executing becomes absolutely mandatory throughout a long proceeding, it might affect the interests of the parties unfairly; and, therefore, we permit the court, upon proper showing to relieve against the stay, but the burden, of course, is upon the person who is asking for that relief." H.R. 6439, 75th Cong., 1st Sess. (1937) 141.

This statement is cited in 6 Collier on Bankruptcy, § 6.12 for the proposition that "the burden of making a proper case for relief is upon the person asking for it." No cases are cited in support of this conclusion and I do not believe that a parenthetical remark by a witness at a Congressional hearing can overrule the numerous decisions on this subject.

Notwithstanding the argument that Section 148 shifted the burden of proof under Chapter X from those supporting the stay to those seeking its termination, the injunction in this proceeding was obtained pursuant to an order of this Court. Said stay was not of the automatic variety as prescribed by Section 148. The authority for the order granting the stay in this proceeding is Section 116(4), 11 U.S.C.A. § 516(4). This section permits a judge upon the approval of a petition to enjoin or stay until final decree "any act or proceeding to enforce a lien upon the property of the debtor." Section 116(4) was derived from former Section 77B(c) (10) and, therefore, the decisions under Section 77B with respect to the burden of proof are applicable to injunctions ordered under Section 116(4). See Lincoln-Alliance Bank & Trust Co. v. Dye, 2 Cir., 1940, 115 F.2d 234; 6 Collier on Bankruptcy, § 3.34, fn. 9.

▌▌ Although the burden rests upon the trustee and those supporting the stay to justify its continuance, the trustee has shown that its continuance is warranted in this proceeding. He has shown that he will shortly file his report concerning his investigation of the debtor's financial condition; that whether or not a fair, equitable and feasible plan of reorganization can be evolved will depend in a large measure upon the results of his investigation; that the collateral in question was purchased by the debtor for a price far in excess of the debt for which it is pledged, and that no radical change of circumstances has occurred since the approval of the Chapter X petition.

The secured creditor should not, however, be required to wait indefinitely for his compensation. Therefore, the trustee is hereby directed to file his report

not later than February 15, 1957, and to give immediate notice of the filing thereof, and if no feasible plan is proposed within thirty days after such notice to creditors and stockholders pursuant to Section 167(6), petitioner may renew his motion to terminate the injunction.

Petitioner's motion to vacate the stay is denied without prejudice.

So ordered.