## MECCA TEMPLE OF ANCIENT ARABIC ORDER OF NOBLES OF MYSTIC SHRINE v. DARROCK.

### No. 330.

Circuit Court of Appeals, Second Circuit.

June 1, 1944.

---

[3] NLR Act § 10(c), 29 U.S.C.A. § 160 (c). Compare N. L. R. B. v. Weyerhaeuser Timber Co., 9 Cir., 132 F.2d 234; N. L. R. B. v. Willard, 68 App.D.C. 372, 98 F.2d 244.

Alexander C. Dick, of New York City (Ben B. Lifflander, of New York City, on the brief), for appellant.

David Haar, of New York City, for appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The debtor, Mecca. Temple of the Ancient Arabic Order of the Nobles of the Mystic Shrine, is an insolvent membership corporation of some 2,800 members, organized under the laws of the State of New York and having an executive office in New York City. Its assets include an interest in two pieces of real estate, the income from which in 1942 totalled $1,363, two cemetery plots, and bank deposits amounting to $9,597.74. Its annual income from dues is approximately $50,000, and it has small miscellaneous receipts of about $2,-500, while its yearly disbursements run to some $10,000 for secretaries, plus around $2,000 for the publishing of a quarterly magazine and $2,500 for rent. The unsecured liability of the organization approximates in principal and interest $1,200,000, as the result of the issuance in 1922, at five per cent interest, of a series of bearer bonds, in principal amount of $763,000, in order to finance the erection of a new temple, later lost by foreclosure. No interest has been paid for ten years on these bonds, nor have any payments been made towards the principal amounts. The bonds, issued in denominations of $100, $500, and $1,000, were originally sold exclusively to members of the debtor and to other fraternal organizations to which Mecca Temple members also belonged, except for the sum of $20,200 principal amount to the architects of the proposed edifice. Through inheritance, assignment, and sale, however, the bonds have so changed hands that present holders are 1,834 in number, scattered throughout the country, and not necessarily all members of the debtor. Appellant is owner of $1,200 of bonds and is in no way connected with the Mecca Temple.

On July 20, 1943, the debtor filed its petition and schedules for arrangement of unsecured indebtedness pursuant to § 322 of Chapter XI of the Bankruptcy Act, 11 U. S.C.A. § 722, in the District Court. By the submitted plan of arrangement the debtor proposed to pay each bondholder ten per cent of the principal amount of his outstanding bonds in installments of one per cent per year for ten years without interest. The court referred the matter to a referee, who sua sponte issued an order that the debtor and the Securities and Exchange Commission show cause on July 29, 1943, why the petition should not be dismissed. After hearings on that and several subsequent days, at which the Commission appeared informally and appellant as intervening creditor pressed for dismissal, the referee finally dismissed the petition, being of the opinion that fair and equitable relief for the creditors of the debtor could be obtained only by a proceeding for a reorganization under Chapter X of the Bankruptcy Act, 11 U.S. C.A. § 501 et seq. The debtor petitioned for review of this order, and the District Court reversed it and reinstated the petition, writing an opinion in which it questioned the authority of the referee to dismiss sua sponte and held the debtor, in any event, to be a different type of corporation from that considered in Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1093, and therefore not barred from relief under Chapter XI. From this judgment, appellant presses the present appeal, which presents us with the two questions whether the referee had power to dismiss the petition on his own motion, and whether the petition was correctly dismissed on the merits.

First, a referee in bankruptcy clearly has the power sua sponte to dismiss a petition for an arrangement under Chapter XI and relegate the debtor to reorganization proceedings under Chapter X. The district judge read Securities and Exchange Commission v. United States Realty & Improvement Co., supra, to permit the application of § 146 of the Bankruptcy Act—dealing with want of "good faith" in the filing of a petition for reorganization, to be passed upon by "the judge" under § 141—to apply to a proceeding under Chapter XI, and thus to support

the inference that action must be by the judge. But what the Supreme Court actually decided was that a bankruptcy court, as a court of equity and in the exercise of its equity powers, could determine under Chapter XI the adequacy of the relief afforded by that Chapter, in the same manner as it can in reorganization proceedings under the specific permission of § 146. 310 U.S. at pages 455, 456, 60 S.Ct. at page 1053, 84 L.Ed. 1293. Hence the "bankruptcy court," rather than the "judge," has this equitable power; and since the Bankruptcy Act, § 1(9), 11 U.S.C.A. § 1(9), includes the referee within the meaning of the term "bankruptcy court," the referee had the power to dismiss here.

On the merits the answer is not as clear cut, but we are of the opinion that the referee acted properly in dismissing the petition in favor of a proceeding under Chapter X. And since the Supreme Court in the United States Realty case, supra, has made an exhaustive comparison and analysis of the respective purposes of, and merits of proceedings under, the two chapters, there is little which can be added to the criteria set forth there. Of course, there still is no well-defined answer in the borderline cases to the question as to whether a particular type corporation should be permitted to proceed under Chapter XI; but especially persuasive here is the nature of the debtor's financial structure, which is such that if a reorganization under Chapter X is not required, the interests of an objecting creditor like appellant are not likely to be adequately protected. We have seen that the annual income of the debtor is well in excess of $50,000, while disbursements total less than $15,000 (a sum which appellant urges could easily be substantially reduced); and yet there is no explanation of the use to which the balance of the receipts is being put. Some explanation is surely due the creditors before they should be obliged to accept 10 cents on the dollar for their principal and nothing at all for their long overdue interest. Should the plan of arrangement proposed in the petition be confirmed, the debtor would be able to liquidate its indebtedness for $7,630 per year for ten years —a result palpably unjust to the unsecured creditors of a corporation whose income appears to exceed its authorized expenditures by nearly $40,000 yearly. These facts by themselves suggest that the plan merits condemnation under Bankruptcy Act, § 366(2), which states that the court shall confirm an arrangement only if it is convinced that "it is for the best interests of the creditors."

The debtor explains the low amount and rate of payment proposed in the plan by the argument that the greater number of the creditors are members of Mecca Temple who are willing to surrender their claims voluntarily for little or no recompense. But it does not appear how many bondholders are of such mind, and the total number of bondholders and the wide area over which they are spread make it unlikely that there is, as yet at least, any definite accord in the matter. Indeed, it is more probable that many do not even know of the pendency of these proceedings, and that many who have been informed suffer from a grave lack of accurate information as to the true state of affairs. For this situation a petition under Chapter X is again the only fair solution. As the Court stated in the United States Realty case: "The basic assumption of Chapter X and other acts administered by the Commission is that the investing public dissociated from control or active participation in the management, needs impartial and expert administrative assistance in the ascertainment of facts, in the detection of fraud, and in the understanding of complex financial problems." 310 U.S. at pages 448, 449, 60 S.Ct. at page 1050, 84 L.Ed. 1093, note 6, citing the various statutes.

The debtor contests this suggestion by alleging that the bonds in question here were virtually a private issue and that there is no "public interest" to be protected. However valid that argument might conceivably have been in 1922, it is patently ridiculous now. The bonds are bearer bonds and have passed from hand to hand for twenty-two years; there are existing over 1,800 bondholders (as compared to only 900 in the United States Realty case), and these are scattered throughout the country. In this connection, the $20,200 in bonds originally issued to the firm of architects of the original building may also be recalled. Surely it cannot be said in the light of such facts that there is no public interest in the bonds. There is an obvious and direct divergence in interest between the nonmember creditors, who desire only repayment, and the member creditors, who are necessarily anxious also to free their fraternal organization finally from the load of debt it has been carrying.

872

■ Yet another reason for reversing the holding below may be found in Bankruptcy Act, § 366(3), which provides that a plan shall not be confirmed unless "it is fair and equitable." As pointed out in the United States Realty case, 310 U.S. at page 452, 60 S.Ct. at page 1051, 84 L.Ed. 1093, an arrangement is not "fair and equitable" which does not conform to the rule of Northern Pac. R. Co.' v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, as applied in Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. These decisions establish the principle that "in any plan of corporate reorganization unsecured creditors are entitled to priority over stockholders to the full extent of their debts and that any scaling down of the claims of creditors without some fair compensating advantage to them which is prior to the rights of stockholders is inadmissible." Thus here the rights of the members, who by § 106(12) of the Bankruptcy Act are assimilated to stockholders, in the assets of the debtor perhaps should be curtailed to compensate the losses to the bondholders, in order that the arrangement be "fair and equitable." It is possible, too, that the creditor rights held by members should be subordinated to the rights of other creditors. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; 8 Collier on Bankruptcy, 14th Ed. 1941, 1179. But these are matters beyond the scope of an arrangement, and hence the debtor should be left to avail itself of the remedies afforded by Chapter X. The judgment below should be reversed for reinstatement of the order of the referee.