## In re TRANSVISION, Inc.

United States District Court,
S. D. New York.
Dec. 30, 1953.

George Zolotar, New York City, for Securities & Exchange Commission.

Schaeffer & Goldstein, New York City, for debtor.

William J. Henry, New York City, for creditors.

SUGARMAN, District Judge.

On September 25, 1953 Transvision, Inc., as debtor, filed a petition in proceedings for an arrangement under Chapter XI of the Bankruptcy Act.[1] It proposed to pay each of its unsecured creditors whose claim exceeded $50 100% of its indebtedness at the rate of 2% monthly commencing six months after confirmation of the arrangement and proposed to pay in full upon confirmation of the arrangement each of its unsecured creditors whose claim did not exceed $50, the administration expenses and certain deposits made by unsecured creditors for the sale of merchandise by the debtor to them.

The proceedings were referred generally to a Referee who, on October 16, 1953 reported

---

1. July 1, 1898, c. 541, § 301 et seq., as added June 22, 1938, c. 575, § 1, 52 Stat. 840 at 905, Title 11 U.S.C.A. § 701 et seq.

"[P]ursuant to provisions of Section 328 of the Bankruptcy Act this proceeding is respectfully referred to the District Court to determine whether the proceeding should remain in Chapter XI or whether because of the public issue of stock, the proceeding belongs in Chapter X [11 U.S.C.A. § 501 et seq.]"

and placed the certificate on the bankruptcy motion calendar.

When it came on for argument there appeared on the same calendar a "Motion for Leave to Intervene" and a "Motion to Dismiss", each brought on by the Securities and Exchange Commission. The Referee's certificate and the Commission's motions were consolidated for hearing.

The debtor is a New York corporation engaged in the manufacture of television and electronic products for private industry and for the United States government. It has outstanding (a) 1,773½ shares of 5% cumulative preferred stock, $100 par value, *all* owned by the management and (b) 385,000 shares of common stock, $1 par value, of which *65%* is owned by the management and *35%* is owned by 425 public investors. The debtor's unsecured creditors are trade and commercial creditors.

The Commission urges that its intervention be permitted and that thereupon the debtor's petition for an arrangement under Chapter XI be dismissed solely because 425 public investors own 35% of the debtor's common stock. The Commission offers the Realty case[2] as the basis for its contentions. That decision does not hold the broad proposition which the Commission ascribes to it, i. e., present public ownership of any part of its stock, a corporation may not undertake an arrangement under Chapter XI and is

relegated solely to a reorganization under Chapter X.[3]

The Realty case held that under the facts there presented[4] Chapter XI was inadequate. The far reaching and oversimplified result which the Commission draws from that decision is unacceptable particularly when the majority opinion says, 310 U.S. at page 454, 60 S.Ct. at page 1052, 84 L.Ed. 1293.

"In a situation *like the present* it is in the best interests of the creditors that these questions should be answered in a Chapter X proceeding.

"While this means that arrangements of unsecured debts of corporations, *like respondent*, may not be 'in the best interests of creditors' and 'feasible' under Chapter XI, *it does not mean* that there is no scope for application of that chapter in many cases where the debtor's financial business and corporate structure *differ from respondent's.* This is especially the case with small individual or corporate business where there are no public or private interests involved *requiring protection* by the procedure and remedies afforded by Chapter X." (Emphasis supplied.)

The quoted language does not mean that Chapter XI is available only to individual and privately owned corporate debtors. It does mean that Chapter XI is not adequate if there are public or private interests which require the investigatory process and protection afforded by Chapter X. The norm is public interest[5] not public ownership of stock, although both were joined in the certificate holding creditors in the Realty case.

It was concluded in that case that the "fair and equitable" standard, es-

---

2. Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293.

3. July 1, 1898, c. 541, § 101 et seq., as added June 22, 1938, c. 575, § 1, 52 Stat.

840 at 883, Title 11 U.S.C.A. § 501 et seq.

4. 900,000 shares of capital stock owned by 7,000 stockholders and a guarantor's liability of $3,710,500 owned by 900 certificate holders.

5. In re Ulen & Co., 2. Cir., 130 F.2d 303.

tablished by the statute as it then existed [6] (which standard has since been eliminated from Chapter XI [7]) could not, under the facts presented, be met, in the light of the "fixed principle" of reorganization law, enunciated in Northern Pacific Ry. Co. v. Boyd,[8] that the junior interest of stockholders could not benefit in reorganization at the expense of the senior interest of unsecured creditors. This is indeed remote from construing the case to have meant that any corporation whose stock is partially publicly held is foreclosed of Chapter XI.

■ The problem was succinctly posed by one commentator who, in reviewing the Realty case, observed [9]

"The question that remains open is: what corporations, in what circumstances, and for what purposes, may use Chapter XI? It is obvious that no useful rule to determine the spheres of the two Chapters is given in the Act. The standard of 'secured' or 'unsecured' debts (Chapter XI being only for compromise of unsecured debts) falls far short of adequacy; indeed, it led to the problem in the principal case. The legal concept of security used in the definition of 'secured creditor' in Section 1(28), contemplating a pledge of definite physical property for a particular debt, is an extremely narrow one and does not include unsecured general credit security issues, i. e., debentures. Nor is the Boyd doctrine, in itself, an adequate test.

"More analytical criteria are necessary. Basic should be a consideration of the purpose of the proceeding: is 'reorganization' of a large corporation with complex capital structure being sought, or the 'rehabilitation' of a small business, or small corporation with very simplified capital structure? Further, a distinction should be drawn between *funded* 'unsecured debts' (debentures) and *unfunded* 'unsecured debts' (trade debts, etc.), and between securities widely held by the public and securities (including stock) held by a small group or by an individual. The fact that securities were widely held is stressed by the court in the principal case, and it was the main argument put forth by the Commission, here and in the case of In re Credit Service Co. [(D.Md.1940) 30 F.Supp. 878, 879]. However, this widespread holding of securities, though important, is only one of the factors that should be considered. If occasion arises, there seems to be no valid reason why a corporation with securities widely held, and even having various debenture issues in its capital structure, but which is seeking merely a 'breathing spell' on its trade debts or other *unfunded* current unsecured debts, should not use the machinery of Chapter XI: Chapter X would be far too cumbersome and would serve no useful end not available in Chapter XI. In general, a situation involving the first of each of the above groups of factors would be one necessitating a Chapter X proceeding: where there is a plan to reorganize or re-shuffle the capital structure, which includes debentures, of a large corporation with shares widely held, the problem cannot completely be dealt with by piecemeal 'arrangements' under Chapter XI. More important, the increased control of the court and the advice and investigating facilities of the Commission are necessary in such a case to see that all interests, especially creditors, are adequately and equitably represent-

6. July 1, 1898, c. 541, § 366, as added June 22, 1938, c. 575, § 1, 52 Stat. 840 at 911, Title 11 U.S.C.A. § 766.

7. July 7, 1952, c. 579, § 35, 66 Stat. 420 at 433, Title 11 U.S.C.A. § 766.

8. 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931.

9. 40 Columbia L.R. 1245 at 1251.

ed. On the other hand, if the debtor is a small corporation, with insignificant holdings in the hands of the public, seeking only to re-establish credit or better its current position by seeking composition or extension of current obligations, the machinery of Chapter XI should suffice.

"These criteria are neither exhaustive nor exclusive, and the factors suggested will vary greatly in importance in different cases. It would seem, however, elastic as these may be, that more than a distinction between large and small corporations, or between close and wide holdings of securities, is necessary."

Applying that test, which, in the absence of Congressional delineation, I believe to be the appropriate one, to the facts at bar, I fail to find any "interests involved requiring protection by the procedure and remedies afforded by Chapter X." [10] This, despite certain assertions in the affidavits submitted in support of the Commission's motions [11] from which it is sought to be implied that *vis a vis* the managerial stock interest and the public stock interest certain improprieties [12] occurred. Accepting *arguendo* the suggested improprieties, they do not spell out the public or private interest intended by the Realty case to invite the concern of a bankruptcy court. If the Commission desires to reach out and play the role usually assumed by a plaintiff in a stockholder's derivative suit it will have to find some basis in law other than the Bankruptcy Act.

Finally, an interest warranting the Commission's intervention is utterly lacking in this case because the only widely dispersed group involved is composed of the public stock holders who

stand to gain by the forebearance of the unsecured trade and commercial creditors contemplated by the arrangement.

The Commission having failed to sustain the burden of showing that the debtor's Chapter XI petition should be dismissed and accordingly having failed to establish an interest warranting its intervention, its motions are denied and the Referee is directed to proceed with the debtor's Chapter XI proceeding for an arrangement.

Settle orders.

10. Footnote 2, supra.

11. The public investors paid $2.75 per share for their 35% of the common stock whereas management paid 30¢ per share for its 65% thereof; the debtor leases office and plant space from a manager-controlled landlord; funds resulting from the public sale of the common stock were used to retire outstanding obligations of the debtor to management interests.

12. The subject matter of note 11 supra was all disclosed in the prospectus filed with the Commission before the issue was offered to the public.