In the Matter of TRANSVISION, Inc., Debtor-Appellee.

Securities and Exchange Commission, Appellant.

No. 22, Docket 23055.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1954.

Decided Nov. 9, 1954.

Writ of Certiorari Denied Feb. 28, 1955.

See 75 S.Ct. 440.

William H. Timbers, Washington, D. C., George Zolotar, New York City, David Ferber, Washington, D. C. (Arthur Goldman, New York City, of counsel), for appellant.

Schaeffer & Goldstein, New York City, for debtor-appellee.

Before CHASE, MEDINA and HARLAN, Circuit Judges.

MEDINA, Circuit Judge.

These are appeals by the Securities and Exchange Commission from two orders of the United States District Court for the Southern District of New York entered on January 12, 1954. One order determined, in response to a question submitted by the referee in bankruptcy, that this proceeding was properly brought under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and should continue therein and directed the referee to proceed therewith. The other denied motions of the Commission (a) for the dismissal of the debtor's Chapter XI petition and of the proceeding and (b) for leave to intervene to urge dismissal.

Transvision, Inc., the debtor, filed a petition under Section 322 of the Bankruptcy Act on September 25, 1953 proposing a Chapter XI arrangement and, by orders entered on the same day, the debtor was continued in possession and the proceeding referred to a referee in bankruptcy. The referee, in turn, by notice dated October 16, 1953, submitted for determination by a District Judge the question "whether the proceeding should remain in Chapter XI or whether,

because of the public issue of stock, the proceeding belongs in Chapter X." On October 28, 1953, the Securities and Exchange Commission moved (a) to dismiss the debtor's petition, (b) to refuse confirmation of the arrangement, (c) to dismiss the proceedings unless the petition be amended, or a creditor's petition be filed, to conform to the provisions of Chapter X, 11 U.S.C.A. § 501 et seq., and, simultaneously, for leave to intervene in the Chapter XI proceeding for the purpose of making the motions to dismiss. After a hearing on October 28, 1953, on the question submitted by the referee and on the Commission's motions, and pursuant to an opinion filed on December 30, 1953, the orders from which this appeal has been taken were entered on January 12, 1954.

The debtor is a New York corporation which has been in existence since 1946, and is engaged in the manufacture of television and electronic products. It has outstanding 385,000 shares of $1 par value common stock and 1,773½ shares of $100 par value preferred stock. Emmanuel M. Cohan, the debtor's principal promoter, his brother and other management interests hold 250,000 shares of the common stock in which voting control is vested and the remaining 135,000 shares are held by approximately 425 members of the investing public. Apparently, the management interest's shares were acquired at a cost of about 30¢ per share and the shares held by the investing public were offered in 1950 at $2.75 per share, following the filing of a Registration Statement with the SEC. The prospectus issued to the public at the time of the public sale disclosed the acquisition cost of the management interest's shares.

The preferred stock is held exclusively by Cohan and his wholly owned corporation, Croyden, having been issued to them in 1950 together with $150,000 in non-interest bearing notes to replace a pre-existing indebtedness to Cohan and Croyden of approximately $327,350. This conversion, although occurring subsequent to the public sale, had been envisaged by the prospectus. The preferred stock is entitled to $5 a share in cumulative yearly dividends and $100 a share in liquidation. No dividends have ever been paid on either class of stock and as of October 31, 1953, the dividend arrearages on the preferred aggregated $26,603. In accordance with the statements published in the prospectus, the $150,000 in notes were subordinated to a loan from the Reconstruction Finance Corporation in the amount of $95,002.

The debtor's schedules, filed October 5, 1953, showed that, according to its books, it has assets of $998,041 and liabilities aggregating $722,589. Of these liabilities, $633,817 consist of unsecured claims, of which $274,096 is due to Cohan, Croyden and other corporate insiders. The bulk of the $274,096 is comprised of the $150,000 in non-interest bearing notes previously mentioned, an additional $100,000 in interest bearing notes given as a result of advances allegedly made by Cohan to the corporation subsequent to 1950, and some $13,896 in accrued interest on the latter indebtedness.

The debtor's executive offices and a substantial portion of its manufacturing plant consisting of approximately 18,000 square feet of space are leased from the Lawrence Syndicate, which is controlled by Cohan, at a lease figure of $12,000 per annum rent plus taxes and assessments of approximately $1,200 per year. This lease and its terms were described in the prospectus issued to the public prior to the public sale and, since that date, the fixed rental has been reduced to $750 per month, apart from the taxes and assessments.

The debtor's operations for the entire six-year period 1947–1952 resulted in a net loss of $217,493, the debtor having shown profits in 1947, 1948 and 1952 and losses in 1949, 1950 and 1951. A $5,000 loss was estimated for the month following the filing of the Chapter XI petition. Unfilled orders aggregate $27,000 and sales are presently estimated by the debtor at $75,000 monthly, in addition to

which the debtor claimed to have prime government contracts for approximately $350,000, which it expected to deliver during the eight-month period commencing December, 1953.

The debtor's Chapter XI petition proposes an arrangement which provides for the liquidation of the unsecured claims against it, except those not exceeding $50 which are to be paid in full on confirmation, in 50 monthly installments of 2% each, commencing six months after confirmation. The interests of both classes of stock remain unaffected as do the claims of priority or secured creditors.

■ It seems clear that the summary procedure provided by Chapter XI, by which a debtor may secure judicial confirmation of an "arrangement" of its unsecured debts, was designed to implement the successful invocation of relatively simple plans for affording debtors means by which, with a minimal disturbance of operations, to extricate themselves from current financial difficulty, without employing the elaborate investigatory and protective procedures attendant upon the usual corporate reorganization proceeding under Chapter X. Indeed, the Bankruptcy Act itself, in requiring every petition under Chapter X to state "why adequate relief cannot be obtained under chapter XI" Bankruptcy Act, § 130(7), 11 U.S.C.A. § 530(7), and in declaring that "A [Chapter X] petition shall be deemed not to be filed in good faith if * * * (2) adequate relief would be obtainable by a debtor's petition under the provisions of chapter 11 of this title", Bankruptcy Act § 146, 11 U.S.C.A. § 546, manifests a conscious purpose of Congress to encourage resort to Chapter XI whenever the remedy afforded thereby adequately protects the interests involved.

■ In this connection, it may be observed that the more complex the debt structure and diffuse the stock distribution, the greater the likelihood that Chapter XI will not afford adequate protections and the greater the impulsion to relegate the petitioner to the relief afforded him under Chapter X. Securities Commission v. U. S. Realty Co., 1940, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293; Mecca Temple, etc., v. Darrock, 2: Cir., 1944, 142 F.2d 869. Nonetheless, the scope of the permissible inquiry into the propriety of proceeding under either chapter is not susceptible of ready definition solely in terms of the existence or non-existence of public stockholders. The feasibility of the arrangement must be examined with a view toward determining whether, in the absence of the elaborate procedures provided for by Chapter X, and considering the debt and corporate structure of the particular petitioner, there is a reasonable likelihood that the desired financial recovery will be effected without unduly prejudicing the rights of any interested parties. The nature of the subject matter precludes any greater degree of certainty, but, since the very purpose in affording an opportunity to proceed under Chapter XI manifestly was to permit the debtor, with the concurrence of the unsecured creditors, and, presumably, a majority of the stockholders, to take just such a calculated risk, it is apparent that absolute certainty was never contemplated by Congress.

■ The Supreme Court has declared that this determination as to the adequacy of the relief afforded by Chapter XI is one within the purview of the district court's discretionary exercise of its equity powers, Securities Commission v. U. S. Realty Co., supra, 310 U.S. at page 456, 60 S.Ct. 1044, and unless the petitioner's corporate and financial condition is demonstrably such as to indicate that the district court has abused that discretion, its determination should be sustained.

■ In the instant case, the facts and circumstances elicited provide no basis for the conclusion that the district court abused its discretion in refusing to require the petitioner to abandon his efforts to obtain relief under Chapter XI in favor of the more elaborate Chapter X proceeding. The proposed arrange-

ment contemplates the eventual satisfaction of all claims of unsecured creditors over a period of fifty months and, if successful, may well enure to the ultimate advantage of the petitioner and its stockholders. The SEC has adduced no information which would tend to indicate that the plan is likely to fail, but has, at most, indicated that there may be some basis for suspecting possible improprieties in past management. Certainly, so ephemeral a suspicion is not an adequate basis upon which to overturn a plan which the District Court, on the facts before it at this time, appears to believe may ultimately be found feasible, and one which, necessarily, would have to be acceptable to at least a majority of the unsecured creditors before being approved. Any dissenting unsecured creditors will be protected if they can show unfair treatment. Mecca Temple, etc. v. Darrock, supra. And there is nothing in the action of the District Court which precludes resort by the stockholders or other corporate interests to any other remedies which may be available should any of them seek redress for any wrongs previously done them by the management.

■ Having determined that the District Court cannot be said to have abused its discretion in determining that the proceeding was properly brought under Chapter XI and in denying the SEC's motions to dismiss the petition and proceeding, we proceed to the question of the correctness of the denial of the SEC's motion for leave to intervene. The 1952 amendment of Section 328 of Chapter XI of the Bankruptcy Act clearly envisages the making of applications of the kind here made by the SEC, and permission to intervene would appear to be a necessary corollary of the right thus conferred by Congress. Moreover, for purely pragmatic reasons, it would appear desirable to allow the Commission to intervene. Further proceedings under Chapter XI may well disclose additional matter which may impel the District Court to conclude, at that time, that the Chapter XI proceeding is inadequate.

The minority shareholders may bring to the court's attention more substantial evidence of irregularities by management; it may appear to the court that justice can be done to the unsecured creditors only by cutting into the interests of the shareholders; or the corporation may not appear to have a good chance of survival unless those creditors' claims are scaled down more than the creditors would be willing to accept on an arrangement. In any event, the SEC should be placed in a position again to urge the dismissal of the Chapter XI proceeding should it be so advised; and its motion for leave to intervene was improperly denied.

The order denying the motion to dismiss is affirmed and the order denying the application for leave to intervene is reversed.