GENERAL STORES CORPORATION,
Debtor-Appellant,

v.

Max SHLENSKY and Securities and
Exchange Commission, Appellees.

No. 261, Docket 23557.

United States Court of Appeals
Second Circuit.

Argued March 18, 1955.

Decided April 14, 1955.

Galston, District Judge, dissented.

Melvin Liebowitz, New York City (Aaron Rosen, Frederic P. Houston, and Otterbourg, Steindler, Houston & Rosen, New York City, on the brief), for debtor-appellant.

A. Alan Reich, New York City (Reich, Peller, Guadagno & Caine and Howard Shugerman, New York City, on the brief), for appellee Max Shlensky.

William H. Timbers, Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (David Ferber, Sp. Counsel, Washington, D. C., and Richard V. Bandler and Ezra Weiss, Attys., Securities and Exchange Commission, New York City, on the brief), for appellee Securities and Exchange Commission.

Max Goldweber, Jamaica, N. Y. (L. J. Weinshenker and Weinshenker & Kenner, New York City, on the brief), for wage claimants.

Leon Singer, New York City (Samuel Blumberg and Blumberg, Singer, Heppen & Blumenthal, New York City, on the brief), for creditors of General Stores Corporation.

Before CLARK, Chief Judge, FRANK, Circuit Judge, and GALSTON, District Judge.

CLARK, Chief Judge.

The debtor, General Stores Corporation, filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 722, for an arrangement of the debts owed to its unsecured creditors. According to its plan these creditors were to receive the full face amount of their claims over a five-year period. Max Shlensky, a stockholder, challenged the adequacy of the Chapter XI procedure through a show cause order seeking a transfer to Chapter X pursuant to the newly enacted 11 U.S.C. § 728. The Securities and Exchange Commission, being granted leave to intervene, filed a motion to similar effect. Judge Dimock granted this motion and ordered the present petition dismissed unless the debtor within forty days filed an amended petition complying with the requirements of Chapter X, D.C., 129 F.Supp. 801. We stayed this order pending our determination of the debtor corporation's appeal. On this appeal the order below is supported by the stockholder and the SEC, while reversal is sought by the debtor and representatives of the general and wage creditors.

The present corporate structure of the debtor corporation is not overly complicated. General Stores Corporation is, however, the corporation formerly known as D. A. Schulte, Inc., whose somewhat checkered financial history is referred to below. At the present time there are two main corporate assets, the cash received from liquidation of the Schulte tobacco stores which were formally the chief source of income, and stock of two wholly-owned subsidiaries, Stineway Drug Company and Ford Hopkins Company. These assets total about $5,000,-000. On the other side of the ledger there are about $4,000,000 of liabilities and a capital account of more than $2,-000,000. Half of the liabilities are the unsecured debts here sought to be settled by arrangement. The other liabilities represent the unpaid purchase price of the subsidiary corporations in which the debtor has just recently invested, and these liabilities are secured by the stock of the subsidiaries. The capital account

consists of 2,322,422 outstanding shares of $1 par common stock, held by 7,000 stockholders and traded on the American Stock Exchange.

As D. A. Schulte, Inc., General Stores went through a § 77B reorganization from 1938 to 1940, in which much of the old common stock turned out to be worthless. Now the new common is again partially under water, and the stockholders are justifiably concerned, for their interests are in no way protected in a Chapter XI proceeding. They fear that the change from Schulte type stores to regular drugstores may only postpone the liquidation or reorganization which may be inevitable; and they wish some assurance of a fair plan now, before the remaining assets are dissipated.

We concur in Judge Dimock's well-reasoned opinion that this situation calls for the greater investigation and protection of Chapter X rather than for the informal arrangement of Chapter XI. His decision, we think, makes an appropriate evaluation and analysis of the criteria set out in Mecca Temple of Ancient Arabic Order of Nobles of Mystic Shrine v. Darrock, 2 Cir., 142 F.2d 869, certiorari denied 323 U.S. 784, 65 S.Ct. 271, 89 L. Ed. 626, which a majority of this panel think were rather slighted in the more recent decision of In re Transvision, Inc., 2 Cir., 217 F.2d 243, certiorari denied Securities & Exchange Comm. v. Transvision, Inc., 348 U.S. 952, 75 S.Ct. 440, though, as Judge Dimock points out and we discuss below, this case differs markedly from In re Transvision, Inc., supra. In our view a widespread stockholder interest in a corporation with such a shaky financial history as this one is in itself sufficient ground for the invocation of Chapter X proceedings. Even the unsecured creditors who are urging the reinstatement of the Chapter XI petition may come to regret their decision during the interval of postponed payment, without interest, of their claims. For the present proceedings are completely in the control of the debtor corporation on whose financial acumen and bookkeeping accuracy must rest the fairness and the feasibility of the proposed arrangement. Too great a public interest is here at stake to allow the present management of the debtor to secure court ratification of such a plan without having available to all parties the disinterested appraisal and judgment of the Securities and Exchange Commission. It is noteworthy that a corporation of this size is one for which SEC intervention is mandatory in a Chapter X proceeding. Bankruptcy Act § 172, 11 U.S.C. § 572.

Hence this is emphatically not the small corporation in which the calculated risk of the informal Chapter XI proceedings is warranted. It does not fall into the category of tightly knit structures where the subordinate creditors and stockholders are the management of the business and where the preservation of going concern value through their continued management of the business may compensate for reduction of creditor claims without alteration of management interests. Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 454, 60 S. Ct. 1044, 84 L.Ed. 1293. The criteria for choice between Chapter XI and Chapter X enunciated in that case were written into the Bankruptcy Act by the enactment of § 328, 11 U.S.C. § 728, in 1952. See 1952 U.S.Code Cong. & Adm. News 1979–1980. We are content to apply them here.

The contrast between General Stores Corporation, a multimillion dollar corporation with 7,000 stockholders whose stock is actively traded on a leading stock exchange of the country, and In re Transvision, Inc., supra, 2 Cir., 217 F.2d 243, 246, 247, is well pointed up by Judge Dimock, who says: "In the Transvision case the debtor had outstanding 385,000 shares of common stock and 1773½ shares of preferred. All were in the hands of management interests except 135,000 shares of common held by 425 investors. It was not listed on any exchange. The debtor's liabilities were about $700,000 and its assets about $1,-000,000." So in that case Judge Sugarman, D.C., 119 F.Supp. 134, exercised his

discretion in denying transfer to Chapter X—a factor emphasized in the United States Realty case, supra, 310 U.S. 434, 455–457, 60 S.Ct. 1044, 84 L.Ed. 1293—and our brothers sustained him. The inference seems clear to us that upon their reasoning they would have sustained Judge Dimock's reasoned exercise of discretion here. We are bound to add, however, that their stress upon such criteria as the proposal of "relatively simple plans" or a "reasonable likelihood that the desired financial recovery will be effected without unduly prejudicing the rights of any interested parties" and their suggestion that a later showing of "irregularities by management" may then lead to an order of transfer do not seem to us realistic or operable in the premises. Rather, following the United States Realty and Mecca Temple cases, the court must evaluate the sufficiency of the remedy for the apparent need and must do so, in order to afford any protection at all adequate, at the beginning of the proceedings and before committing steps of a contrary nature have been taken. This is the course which was taken below. Its order must therefore stand, except of course for the setting of a new date within which the debtor or its creditors may file an amended petition under Chapter X if they so choose. Our stay will remain in effect until the district court acts.

Order affirmed; action remanded.

FRANK, Circuit Judge (concurring).

I agree with all that Judge CLARK says. However, while he may well not have intended to go beyond severely restricting the recent decision of this court in In re Transvision, Inc., 2 Cir., 217 F.2d 243, his opinion may perhaps be read as intending to overrule it. I think it desirable, therefore, to say that I am not ready to go that far, although, had I been sitting in the panel which decided that case, I would have dissented. I would say here merely that I think the rationale of the Transvision decision should be limited to a case where the facts are in most respects similar, i. e., a case where (a) but a relatively small proportion of the securities is publicly held by a small number of investors, (b) none of the securities was listed on any exchange, (c) the assets do not exceed approximately $1,000,000, and (d) there are merely the faintest suspicions raising questions about the conduct of the management.

GALSTON, District Judge (dissenting).

I do not believe that Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, compels an affirmance of the order below. Rather the circumstances presented in the present proceeding are essentially, in principle, the same as are set forth in In re Transvision, Inc., 2 Cir., 217 F.2d 243. Judge Medina, in the Transvision opinion, weighed both Securities and Exchange Commission v. United States Realty & Improvement Co., supra, and Mecca Temple, etc. v. Darrock, 2 Cir., 142 F.2d 869, but observed:

"Nonetheless, the scope of the permissible inquiry into the propriety of proceeding under either chapter is not susceptible of ready definition solely in terms of the existence or non-existence of public stockholders." [217 F.2d 246.]

Clearly herein there are presented but two classes of interests: (1) that of the stockholders; (2) that of unsecured creditors. It cannot be too strongly emphasized that neither the company itself nor its unsecured creditors seek a reorganization. A single stockholder and the Securities and Exchange Commission nevertheless intervene to thwart the plan of arrangement submitted by the corporation to its unsecured creditors which would enable those creditors to receive a full 100% payment of their claims.

What is to be effected by a plan of reorganization? What is there to reorganize?

An anomalous situation arises because if the debtor had moved in the first instance under Chapter 10, it is very doubtful whether in its petition it could have

met the requirements of Section 530, Title 11 of Chapter 10. In that event it would seem that the provisions of Section 547 of Title 11, Chapter 10, would apply. That section provides that when a petition filed under Chapter 10 discloses that adequate relief could be obtained by the debtor under Chapter 11, an amendment to comply with the requirements of Chapter 11 could be made. See John Hancock Mut. Life Ins. Co. v. Casey, 1 Cir., 141 F.2d 104.

Acceptance of the plan of arrangement is on its face all that the company needs to carry on its affairs. The wage earners who fall among the unsecured creditors, and who are eager to have prompt payment, certainly will suffer delay if proceedings are had under Chapter 10.

In the motion for leave to intervene made by the Securities and Exchange Commission it is alleged that "if the proposed arrangement is confirmed and the proceedings are not dismissed, the interests of investors in this proceeding will be improperly affected." But there is nothing in the record before this court which sustains that allegation.

The debtor has no funded debts by way of debentures or certificates of indebtedness of any kind—bonds, mortgages, notes or obligations of like character, sold, distributed or in the hands of the general public. So much appears in the affidavit of the president of the debtor. As I have intimated, the proposed plan of arrangement does not seek to modify in any form whatsoever the capital stock of the debtor.

The order under review, if the debtor desires to have the sanction of the Bankruptcy Act, leaves no alternative but to endeavor to comply with the requirements of Chapter 10. Failing that, it is faced with the necessity of endeavoring to settle with its creditors out of court. In doing so it runs the hazard of committing an act of bankruptcy which might enable some creditors to file a petition in ordinary bankruptcy. So liquidation of the debtor would ensue. Chapter 10, as I have stated, is essentially designed to enable a debtor to work out a plan of reorganization. Historically its immediate predecessor was Chapter 77B of the Bankruptcy Act, and that in turn followed the old equity receivership, the outstanding characteristic of which was to seek a plan of reorganization of vested and conflicting interests.

It would seem to be sound common sense to leave the management of the business to the judgment of its officers and directors. There is not the slightest suggestion of the violation of any state law. Indeed if stockholders should determine that there has been bad management or misjudgment or fraud, ample relief is possible under the corporation laws of the State of New York, the domicile of the debtor.

For the foregoing reasons I feel impelled to dissent.