In the Matter of the **WILCOX–GAY COR-
PORATION**, a Michigan Corpora-
tion, Debtor,

and

Garod Radio Corporation, a New York
Corporation, Debtor.

Nos. 12735, 12737.

United States District Court
W. D. Michigan, S. D.

Aug. 3, 1955.

Arthur J. Homans, New York City, Kenney, Radom & Rockwell, Detroit, Mich., for Wilcox-Gay Corp. and Garod Radio Corp.

Walter K. Schmidt, Grand Rapids, Mich., for trustee.

Merle C. Baker, Grand Rapids, Mich., for creditors.

Edward P. McGuire, Chicago, Ill., for Securities and Exchange Commission.

KENT, District Judge.

This matter is before the Court on like motions in each case by the Securities and Exchange Commission, which motions pray for leave to intervene in the proceedings, and for other relief hereinafter outlined.

On January 20, 1955, petitions were filed on behalf of the named corporations under the provisions of Chapter X of the Bankruptcy Act.[1] The petitions were approved and Wadsworth Bissell was appointed as Trustee of the corporations, and qualified as such on January 21, 1955. By order the matter was referred to Chester C. Woolridge, Referee in Bankruptcy.

The Wilcox-Gay petition recites that such corporation is a Michigan corporation, engaged in the manufacturing business, and that its principal office is located in the City of Charlotte, Michigan, within the Western District of Michigan. The petition recites that the Wilcox-Gay Corporation is the parent of a number of other corporations: (a) Garod Radio Corporation, a New York corporation, which is in turn the parent of a wholly-owned subsidiary known as Garod International Corporation, a New York corporation; (b) Majestic International

Corporation, an Illinois corporation; (c) Majestic Major Appliance Corporation, an Ohio corporation; (d) Majestic T-V Distributors, Inc., a Massachusetts corporation.

Attached to such petition was a condensed consolidated balance sheet covering the Wilcox-Gay Corporation, and its wholly owned subsidiaries, showing total consolidated assets in the amount of $5,990,606.02, and total consolidated liabilities, exclusive of capital and surplus, in the amount of $4,479,940.06. The liability item includes $222,300 of 20-year 5% convertible debenture bonds due December 31, 1965.

The petition on behalf of the Wilcox-Gay Corporation set forth reasons for the filing of the petition and for the precarious financial position of the parent corporation. The petition set forth reasons why relief under the provisions of Chapter X of the Bankruptcy Act was essential to the continued operation of the corporation. The petition recited that the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., were not available for the reason that certain rights of secured creditors required consideration and adjustment which could not be done under the provisions of Chapter XI. All other requirements for a Chapter X proceeding were met by the allegations of the petition.

The order which was proposed and submitted with the petition suggested the appointment of the president of said corporation, Leonard Ashbach, as one of the trustees in the Chapter X proceeding, with permission to continue operation of the corporation.

A similar petition and order on behalf of the Garod Radio Corporation was filed at the same time in accordance with provisions of the Bankruptcy Act. The order which was entered approving the petitions, appointing a trustee and referring the matter to the Referee in Bankruptcy, deleted the provision relative to the appointment of Leonard Ashbach as trustee, and Wadsworth Bissell, a dis-

1. 11 U.S.C.A. § 501 et seq.

interested person satisfactory to the court, was appointed as trustee.

Paragraph 14 of the order provides in part—

"That said Trustee be, and he hereby is, directed to investigate the acts, conduct, property, liabilities and financial condition of said debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeedings or to the formulation of a plan. * * * "

Wadsworth Bissell qualified as trustee of each of the corporations on January 21, 1955 and filed the required bond in each case in the amount of $100,000.

On March 11, 1955, the debtor corporations filed petitions to transfer the proceedings to Chapter XI of the Bankruptcy Act [2], setting forth good and sufficient reasons for such transfer, and on that date orders were entered by the court permitting the debtors to amend their petitions to conform to the provisions of Chapter XI of the Act. In such petitions for transfer it was alleged that in the interim period between January 20 and March 11, 1955, the obligations to the secured creditors had been liquidated or provisions made for liquidation in the immediate future.

In April, 1955, both debtors filed plans for arrangement which have since been amended, providing for the payment of priority claims, including payment of interest on the debenture bonds heretofore referred to, the scaling down of general creditors' claims by 50%, and the payment thereof over a period of 5 years at the rate of 10% per year.

On June 2, 1955, the SEC appeared, pursuant to § 328 of the Bankruptcy Act,[3] and filed a motion for leave to intervene and requested the court (a) to dismiss the debtors' petitions herein; (b) to refuse confirmation of the debtors' proposed arrangements, and (c) to dismiss these proceedings unless the debtors' prior petitions under Chapter X of the Bankruptcy Act be reinstated under said chapter. The motions set forth certain facts and made general allegations as grounds for opposing the use of the provisions of Chapter XI for the relief of these debtor corporations.

A hearing was had on the motions of the SEC on July 20, 1955, at which time evidence was presented by the debtor corporations in opposition to the granting of the motions filed by the SEC. No evidence was offered on behalf of the movant in support of the allegations of fact set forth in the SEC motions.

It is undisputed that Wilcox-Gay is a Michigan corporation and has outstanding in the hands of the public $222,300 face amount of 20-year 5% convertible debentures, presently held by several public investors.

The Wilcox-Gay Corporation has outstanding 1,600,000 shares of no par value Common Stock, all of which is held by Leonard Ashbach, president of the debtor, and 1,614,865 shares of $1.00 par value Common Stock, 500,000 of which are held by Leonard Ashbach, and the remaining 1,114,865 shares of which are held by other officers of the corporation and approximately 3,000 public investors.

It appears that the SEC received copies of the petitions and orders in each case immediately after the filing thereof. It was conceded on the hearing of the SEC motions that no effort had been made by or on behalf of the SEC to investigate the work of the trustee, who is now acting as receiver of said corporations under the provisions of Chapter XI of the Bankruptcy Act. It was conceded that the Referee in Bankruptcy and all other interested parties have cooperated with the SEC on request and that no effort has been made to conceal any relevant facts.

From the testimony, offered at the time of the hearing of the motions, it appears that Wadsworth Bissell, the trustee and receiver of the debtor corporations, entered into possession of the property of the debtor corporations as ordered, that subsequently the trustee, on order of the

---

2. 11 U.S.C.A. § 701 et seq.

3. 11 U.S.C.A. § 728.

Referee in Bankruptcy, employed Seidman and Seidman, Certified Public Accountants never previously employed by the debtors, to examine the affairs, and make a detailed audit of the books and records of the debtor corporations. Further, pursuant to an order of the Bankruptcy Court, Stephenson, Jordan and Harrison, Management Consultants, were employed by the trustee to survey and report upon the profit potentialties of the operations of the debtors' Charlotte, Michigan plant.

During the course of the proceedings in the Bankruptcy Court, under the provisions of Chapter X of the Bankruptcy Act, a creditors committee representing more than 75%, in amount, of the general creditors was appointed and cooperated thereafter with the trustee and the receiver and the respective counsel involved, in an effort to work out a plan for the continued operation of the business of the debtor corporations.

Testimony was offered on behalf of the debtor corporations, and undisputed by the SEC as of the date of the hearing of the SEC motions, that presently the debtor corporations and their subsidiaries, are, in effect, wholly owned by the creditors of the corporations, that the outstanding securities of the debtor corporations have no present book value. The plan as submitted under the provisions of Chapter XI is the joint effort of the trustee-receiver, the creditors' committee, the attorney for the trustee-receiver, the attorneys for the debtors, the officers of the debtors and the attorneys for the creditors' committee. The plan contemplates that the creditors, until fully satisfied under the terms of the plan, shall have two representatives on the Board of Directors of the Wilcox-Gay Corporation. The plan further contemplates that the comptroller of the Wilcox-Gay Corporation shall be selected by the creditors' committee and shall remain as such until the creditors have been fully satisfied under the terms of the plan. The plan has been in part implemented by the employment of the person selected by the creditors' committee as comptroller approximately 30 days prior to the date of the hearing of the motion and said person has entered upon his duties with the Wilcox-Gay Corporation.

The SEC takes the flat position that the provisions of Chapter XI of the Bankruptcy Act are not avilable in a situation such as is presented here. The SEC contends:

> "To permit this debtor with widely held securities to utilize the limited powers of the bankruptcy court under Chapter XI in aid of its continuance in its present business by its present management is wholly contrary to the intent of the Bankruptcy Act * * * Chapter X alone provides the necessary investigative and analytical procedures and grants the Court the necessary powers to effectuate a sound reorganization for the protection of debtor's public investors."

The SEC further contends that the Chapter XI arrangement "Provides no independent investigation as to whether continuance of the debtor's business might be in the interests of its stockholders." Further objections to the use of the Chapter XI proceedings are because there is no provision for an independent investigation of "causes of the debtor's financial difficulties" and "an independent investigation by a disinterested trustee might reveal that different methods of operation were desirable, changes in management would benefit the estate or other changes which would improve the possibility of the debtor's operating profitably for the benefit of both creditors and stockholders."

It appears that the SEC assumes that the term "public interest" and the term "public investors" are necessarily synonymous, and that therefore any company having securities which are held by public investors is necessarily prevented from using the facilities provided by the provisions of Chapter XI of the Bankruptcy Act.

It is the contention of the SEC that Securities and Exchange Commission v.

United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, holds that Chapter XI is not available to "large" corporations having "widely held" securities, and it further cites in support of its position Mecca Temple of Ancient Arabic Order of Nobles of the Mystic Shrine v. Darrock, 2 Cir., 142 F.2d 869, General Stores Corporation v. Shlensky, 2 Cir., 1955, 222 F.2d 234, and In re Reo Motor Car Co., D.C.W.D.Mich. 1939, 30 F.Supp. 785.

The SEC neglects to cite In re Transvision, Inc., D.C.1953, 119 F.Supp. 134, affirmed 2 Cir., 1954, 217 F.2d 243, certiorari denied, Securities and Exchange Commission v. Transvision, Inc., 348 U.S. 952, 75 S.Ct. 440. It is the claim of the SEC that In re Transvision, Inc., supra, was overruled by the Second Circuit in the case of General Stores Corporation v. Shlensky, supra. An examination of the General Stores case, as reported, shows that the majority opinion, written by Chief Judge Clark, was concurred in by Judge Frank, who specifically stated in a concurring opinion that the General Stores Corp. case was not overruling the Transvision case, and the third judge, District Judge Galston, dissented in the General Stores case.

■ An examination of the several cases cited leads this court to the conclusion that the determination of the issues raised by the motions of the SEC lies within the sound discretion of the District Court. If all of the allegations and opinions set forth in the motions of the SEC could be sustained we would have been quickly persuaded that the procedure available under Chapter XI would not be satisfactory in this case. However, the evidence, the files of this court and the files of the bankruptcy court, which have been offered and received in evidence without objection, convince this court that in fact the necessary investigative and analytical procedures provided by Chapter X have been carried out by the trustee, with the assistance of his independent advisors. This court is convinced that there is no need for further independent investigation and this court is convinced that no benefit would accrue to secured creditors, general creditors, or the investing public if these debtor corporations were required to dismiss the Chapter XI proceeding and submit themselves to further prolonged and involved investigation under the provisions of Chapter X, much of which activity would be a duplication of efforts already carried out by the trustee and his independent advisors and by the creditors' committee.

We are unable to determine that the investing public would be in any way benefited by delay, in consideration of the plan submitted for an arrangement with the general creditors, in order to adjust the interests of the investing public, which interests can only have value if the general creditors, who are largely the suppliers of the debtor corporations, are willing to cooperate by further extensions of credit in an effort to continue the operation of these debtor corporations on a profitable basis.

It is contended on behalf of the debtor corporations in opposition to the motion to dismiss; "the debtor is entitled as a matter of right to proceed under Chapter XI inasmuch as it seeks only to effectuate a compromise with its unsecured trade and commercial creditors. Propriety of proceeding under Chapter XI is determined solely by the relief sought by the debtor corporation and not by its size comparatively, or its physical structure, or proportion of its securities which are publicly held."

Under the circumstances of this case the determination of the issue raised on behalf of the debtor corporations by the proceeding statements is not necessary to a decision. We do point out, however, that as stated by the attorneys for the debtor corporations in their brief: "In many respects bankruptcy court acts as a court of equity", Pepper v. Litton, 308 U.S. 395, 60 S.Ct. 238, 84 L.Ed. 281.

The flat statement made by debtor's counsel is too broad and is not in accord with the decisions. As has been previously stated it is this court's conclusion that the determination of the pro-

priety of transferring these proceedings from Chapter X to Chapter XI is a matter for the discretion of the court after consideration of all the pertinent facts.

As was stated by Judge Medina In re Transvision, Inc., 217 F.2d 243, at page 246—

"* * * the scope of the permissible inquiry into the propriety of proceeding under either chapter is not susceptible of ready definition solely in terms of the existence or non-existence of public stockholders. The feasibility of the arrangement must be examined with a view toward determining whether, in the absence of the elaborate procedures provided for by Chapter X, and considering the debt and corporate structure of the particular petitioner, there is a reasonable likelihood that the desired financial recovery will be effected without unduly prejudicing the rights of any interested parties. The nature of the subject matter precludes any greater degree of certainty, but, since the very purpose in affording an opportunity to proceed under Chapter XI manifestly was to permit the debtor, with the concurrence of the unsecured creditors, and, presumably, a majority of the stockholders, to take just such a calculated risk, it is apparent that absolute certainty was never contemplated by Congress.

"The Supreme Court has declared that this determination as to the adequacy of the relief afforded by Chapter XI is one within the purview of the district court's discretionary exercise of its equity powers, Securities [and Exchange] Commission v. United States Realty [& Improvement] Co., supra, 310 U.S. [434] at page 456, 60 S.Ct. 1044 [84 L.Ed. 1293], and unless the petitioner's corporate and financial condition is demonstrably such as to indicate that the district court has abused that discretion, its determination should be sustained."

The determination of the feasibility of the proposed arrangements is a matter for the Referee in Bankruptcy under the orders of reference heretofore entered in these cases. An initial examination of these plans by the Court, from an outline given in open court by counsel for the debtor, indicates that the proposed arrangement is feasible, that the efforts of the trustee have resulted in substantial improvement in the financial position of the debtor corporations, and the evidence in the record has satisfied the court that there is a "reasonable likelihood" that consummation of the proposed arrangement will result in the desired financial recovery of the debtor corporations. In view of the present financial condition of the debtor corporations, having in mind the rights of the unsecured creditors and of the secured creditors, we are unable to find any possibility of prejudice to the investing public. The stockholders, regardless of the class of stock, have no present financial interest in the debtor corporations or any of their subsidiaries. That interest can only come into existence and grow in the event that the continued operations of the debtor corporations are profitable.

It was stated in open court that the creditors would be unwilling to agree to any plans such as have been proposed, if the present management were required to entirely divorce itself from the continued operation of these corporations. The proposed arrangements contemplate that jurisdiction over the Chapter XI proceedings will be retained by the Referee in Bankruptcy, to be exercised in the event the proposed arrangements do not work out as contemplated. Thus an avenue will be open at all times for minority stockholders or other interested parties to bring to the court's attention any evidence of substantial irregularities by management.

The SEC further takes the position that this court is without jurisdiction to transfer the proceedings involving the Garod Radio Corporation from Chapter X to Chapter XI on the theory that this court does not "have jurisdiction" over

a Chapter XI proceeding involving a New York corporation. The court's jurisdiction was originally invoked under the provisions of § 129 of the Bankruptcy Act [4] which permits a subsidiary corporation to file an original petition in the court which approved the petition by its parent corporation. Subsequently, the proceedings under Chapter X were transferred to Chapter XI pursuant to the provisions of § 147 of the Bankruptcy Act.[5]

Collier on Bankruptcy, 14th Ed., Vol. 8, § 4.05, pages 299–300 has this to say in regard to the contention of the SEC—

"It may be argued that even though no provision of Chapter XI requires a § 322 petition to state the facts showing venue, nevertheless it is a requirement of Chapter XI for the filing of an original petition thereunder that the petition be filed with the court which would have jurisdiction of a petition for the debtor's adjudication. Hence it may further be argued in the case suggested that since the Chapter X proceeding is pending in a district which would not be the proper venue for a § 322 petition, the Chapter X petition could not be amended under § 147. That view, however, does not seem consistent with the intent of Congress in enacting § 147, which was to avoid circuity of procedure in dismissing the Chapter X petition and compelling the debtor to start ab initio under Chapter XI. Since the bankruptcy court has jurisdiction of the proceeding, it does not seem to have been intended that it lose that jurisdiction and that the benefits of § 147 be withheld because of a venue requirement. It rather seems that an original Chapter X petition can be amended under § 147 even though the proceeding is pending in a district which would not have been the proper venue for the filing of a § 322 petition, unless the debtor deliberately filed its Chapter X petition with the intention of amending it under § 144 in order to circumvent the venue requirements of Chapter XI."

The court is satisfied from the record in these cases that there never was any intention to circumvent the venue requirement of Chapter XI, and that the petition for transfer from Chapter X to Chapter XI was justified and advisable because of the change in circumstances of the debtor corporations.

The attorneys for the debtor corporations have pointed out in their brief that the delay on the part of the SEC in filing its motion should be sufficient to justify denial of the motions to dismiss the Chapter XI proceedings or require that the proceedings be returned to Chapter X. While the court does not feel it necessary to rule upon this point directly, it appears from the record that the proceedings under Chapter X and Chapter XI have continued with commendable rapidity. It appears without question that the SEC has had knowledge of the steps taken, including the filing of the original petitions, within a very brief time after the original filing and within a very brief time after the transfer to Chapter XI. No reason has been given for the delay in filing the motions at a time when plans of arrangement have been submitted and are now ready for hearing. As a matter of fact counsel for the SEC stated in open court that 2½ months delay in filing the motion did not seem at all unreasonable. With this view the court is not in accord. Courts and attorneys have been criticized frequently for delay in legal proceedings. These criticisms have been particularly directed toward Chapter X proceedings for the reorganization of corporations. Without intending to conclude that the SEC has been guilty of laches we are of the opinion that the unexplained delay is without justification. Decision of this point is not necessary nor did it play any part in causing the court to reach the

---

4. 11 U.S.C.A. § 529.

5. 11 U.S.C.A. § 547.

conclusions which have been reached in this case.

For the reasons herein stated the court concludes the following:

1. The determination of the propriety of the use of the provisions of Chapter XI by corporations, such as are involved here, lies entirely within the sound discretion of the trial court; (2) this court has jurisdiction over the Garod Radio Corporation under the Chapter XI proceeding; (3) further delay which would be necessarily required by a transfer of the proceedings back to Chapter X for further, and what appears to be unnecessary investigation, which is at best cumbrous and which might very possibly prejudice the ultimate success of the proposed plans, is entirely unnecessary; (4) no satisfactory reason has been given for the delay by the SEC in filing its motions which are herein denied; (5) there is no substantial public interest, on the part of the owners of the publicly held securities, which requires the intervention of the SEC and return of these proceedings to Chapter X. This court feels that a distinction should be drawn between "public ownership" and "public interest"; (6) the efforts on the part of the trustee-receiver, with the assistance of his accountants, counsel and management consultants, in cooperation with the other interested parties, including the creditors' committee and its counsel, have resulted in a thorough investigation of the operations and financial condition of these debtor corporations, and further investigation is unwarranted and unnecessary; (7) without ruling on the acceptability of the plan and without confirming or in any way approving the plan, as submitted on behalf of the debtor corporations under Chapter XI, it appears to the court that the present plan is feasible and might be reasonably anticipated to result in the rehabilitation of these debtor corporations as profitable enterprises.

The motions on the part of the SEC, for leave to intervene in these proceedings, for the purpose of these motions have been previously granted.

The motions to dismiss the debtors' petitions for relief under Chapter XI of the Bankruptcy Act are denied.

The motions for an order refusing confirmation of the debtors arrangements are not decided, the matter having been referred to the Referee in Bankruptcy.

The motions to dismiss the Chapter XI proceedings, unless the debtors original petitions under Chapter X be reinstated, are denied.

Orders may be entered accordingly.